Mark Wilk, OSB #814218
mwilk@oregonlawcenter.org
Oregon Law Center
230 W. Hayes St.
Woodburn, OR 97071
Phone: (503) 981-0336
Fax: (503) 981-0373

David Henretty, OSB #031870
dhenretty@oregonlawcenter.org
Oregon Law Center
522 SW 5th Ave, Suite 812
Portland, OR 97204

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

MEDFORD DIVISION

| | |
|---|---|
| MANUEL PEREZ,  ANTONIA CORDOBA GOMEZ, GILBERTO CARRILLO, individually and on behalf of all others similarly situated, | Civil No. 1:19-cv-01477-AA |
| Plaintiffs, | PLAINTIFFS' UNOPPOSED MOTION AND MEMORANDUM FOR FINAL APPROVAL OF SETTLEMENT |
| v. | |
| PLANASA OREGON OPERATIONS, LLC, NEXTCROP, INC., SUGAR PINE HOTEL, INC., FKA LAKSHMI MANAGEMENT, INC., DBA MAJESTIC INN & SUITES | |
| Defendants. | |

**LR 7-1 CERTIFICATION**

In compliance with Local Rule 7-1(a), the parties, through their respective counsel, have engaged in extensive negotiations for settlement of this action on a class basis, including: a day-long mediation on November 21, 2019 that resulted in substantive settlement; a more detailed settlement of all claims of the Class against Defendants, as set forth in the parties' Settlement Agreement (attached as Exhibit 1);  and additional discussions between November 2019 and April, 2021 to implement the parties' Settlement Agreement. A copy of the draft Motion for Final Approval of Settlement was provided to counsel for defendants on April 1, 2021, and supporting documents were provided on April 19, 2021. Defendants do not oppose this Motion.

**MOTION**

Plaintiffs Manuel Perez, Antonia Cordoba Gomez and Gilberto Carrillo, individually and on behalf of the proposed Class, hereby move this Court as follows:

1. approve the Settlement Agreement as fair, reasonable, adequate, and binding on all Class Members who have not timely opted out of the settlement;

2. enjoin all Class Members who did not opt out from pursuing and/or seeking to reopen claims that have been released by the Agreement;

3. order the Settlement Claims Administrator to distribute Settlement Checks to the Authorized Claimants and Service Awards to the Named Plaintiffs as described in the Agreement;

4. order that the Settlement Administration Funds and Class Counsel's Attorney Fees and Costs be paid from the Qualified Settlement Fund (QSF);

5. order the Settlement Claims Administrator to (i) provide verification to Class Counsel and Defendants' Counsel that he has distributed the Settlement Checks; and (ii) retain copies of all endorsed Settlement Checks;

6. dismiss the Action against the Defendants with prejudice and without costs or fees not referenced in the Agreement, and release the Released Class Claims (as defined in the Agreement) against Defendants;

7. enter a Final Order in accordance with the Agreement;

8. retain jurisdiction over the interpretation and implementation of the Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of the Agreement and of the settlement contemplated thereby.

In support of their Motion, plaintiffs provide the Court with the Report of the Mediator, Report of the Settlement Claims Administrator, Declaration of Mark J. Wilk in Support of Final Approval of Settlement, Declaration of Mark J. Wilk in Support of Award of Attorney Fees and Costs, and the following memorandum.

## MEMORANDUM IN SUPPORT

### I.Introduction

On September 16, 2020, the Court entered its Order Conditionally Certifying Class and Granting Preliminary Approval of Settlement. Plaintiffs seek final approval of the agreed settlement on behalf of a class of  69 migrant agricultural workers whom defendant Nextcrop employed to work for defendant Planasa and who in connection with their work were lodged in the Majestic Inn & Suites in Klamath Falls, Oregon in 2017 by defendant Majestic. Ex. 1 Sec. 1.33; Report of the Settlement Claims Administrator (SCA Report) ¶ 4. Plaintiffs file their Motion pursuant to Fed. R. Civ. Pro. 23(e).

Defendants do not object to this Motion and agree to the relief sought by plaintiffs. The proposed settlement is the result of extensive arms-length, non-collusive negotiations between plaintiffs and defendants, including a day-long mediation conducted by Ken Pallack through the Oregon Department of Agriculture Farm Labor Mediation Program. *See,* Report of the Mediator. The settlement provides statutory damages of $1045.00 to each of the 37 class members who timely returned a signed claim form. Declaration of Mark J. Wilk in Support of Settlement (Wilk Settlement Dec.) ¶ 1; SCA Report ¶ 40.

The Settlement Agreement proposes that each of the three named plaintiffs receive a service award of $2000.00 for services rendered to the settlement class. Ex. 1, Section 3.1.C.  It proposes an award of $20,000.00 to class counsel for attorney fees, costs and expenses in the prosecution and resolution of the Action. Ex. 1, Section 3.1.D. It provides payment of $3000.00 to the Settlement Claims Administrator. Ex. 1, Section 3.1.E.

## II. Status of the Case

Since preliminary approval of the settlement agreement, extensive efforts have been made to provide notice of the pendency of this Action to all class members, to respond to inquiries and answer questions, and to facilitate the completion and return of claim forms by class members interested in participating in this settlement of their potential claims. *See, generally* Report of Settlement Claims Administrator Mark J. Wilk (SCA Report).

The initial claiming period of 90 days was extended for an additional 60 days for class members who did not receive notice. Ex.1 Sec. 1.4. As of the final Bar Date of

Page   - PLAINTIFFS' UNOPPOSED MOTION AND MEMORANDUM FOR
              FINAL APPROVAL OF SETTLEMENT

March 4, 2021, 37 class members returned signed claim forms. SCA Report ¶ 40. No class members have filed opt-out statements or objections to the settlement. SCA Report ¶ 43, 44. Pursuant to the Class Action Fairness Act, ("CAFA"), 28 U.S.C. § 1715, notice of the proposed settlement was provided to the appropriate government entities in Arizona, California and Oregon, and to the US Department of Justice, on March 17, 2021. Wilk Settlement Dec. ¶ 2.  No concerns or objections from any government entities have been received. Wilk Settlement Dec. ¶ 2.

III.Final Approval of the Proposed Settlement Agreement

Fed. R. Civ. Pro. 23(e) requires judicial approval for settlement of a class action, and Fed. R. Civ. Pro. 23(e) further requires, "if the proposal would bind class members," a judicial finding that the terms of the parties' settlement are "fair, reasonable and adequate."  In *Hanlon v. Chrysler Corp.*, 150 F.3d 1011,1026 (9th Cir.1998), the Court articulated considerations for this Court to weigh, denominated "the *Hanlon* factors", to ensure the settlement is fair, reasonable and adequate:

> Assessing a settlement proposal requires the district court to balance a number of factors: the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceeding; the experience and views of counsel;  the presence of a government participant; and the reaction of class members to the proposed settlement.

*Hanlon* at 1026. These factors are now denominated the "*Churchill* factors."  4 Newberg on Class Actions  13.48 fn 3 (5th Ed.), citing *In re Online DVD-Rental Antitrust litigation*, 779 F.3d

934, 944 (9th Cir. 2015); *Churchill Village LLC v. General Electric*, 361 F.3d 566,575 (9th Cir. 2004).

The factors used in the Ninth Circuit all support final approval of the settlement agreement and settlement of this Action as a class action. *See, Officers for Justice v. Civil Service Com'n of City and County of San Francisco,* 688 F.2d 615, 625 (9th Cir. 1982): "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." Not every factor must weigh in favor of approval, but in this case, all factors do favor judicial approval.

### A.  The strength of the plaintiffs' case

The claims in in this civil action are for statutory damages for alleged violation of federal and state laws concerning the registration and provision of agricultural labor housing under the federal Migrant and Seasonal Agricultural Workers Protection Act (AWPA), 29 U.S.C.  1811 *et seq.*; the Oregon Camp Operator Registration Act (CORA), ORS 658.750 *et seq.*; and the Oregon Contractor Registration Act (OCRA), ORS 658.750 *et seq.* While plaintiffs are confident of their theories of recovery, whether these statutes apply under the facts of this case is not entirely clear.

The AWPA "does not apply to any person who, in the course of that person's business, regularly provides housing on a commercial basis to the general public and who provides housing to migrant agricultural workers of the same character and on the same or comparable terms and conditions as is provided to the general public."  29 U.S.C. § 1823(c). The CORA excludes from its definition of "farmworker camp" a "hotel or motel which provides housing

with the same characteristics on a commercial basis to the general public on the same terms and conditions as housing is provided to such workers." ORS 658.705(7)(b).

It is clear that the Majestic Inn & Suites is a commercial motel open to the general public. Plaintiffs allege that Planasa reserved the entire facility for three weeks in 2017 to house workers employed by Nextrcrop to work for Planasa, that it paid the Majestic for each worker housed, and that the housing did not have the same characteristics nor was it provided on the same terms and conditions as was provided to the general public. Defendants claim that the "innkeeper" exemptions in both statutes apply, and that they have additional defenses to all of Plaintiffs' claims.

Defendants all deny any liability. Defendant Planasa claims that it neither provided the housing, nor owns or controls it, citing *Renteria-Marin v. Ag-Mart Produce Inc.*, 537 F.3d 1321, 1326 (11th Cir. 2008) (agricultural employer did not own or control housing although it arranged payment and oversaw workers). Nextcrop's written disclosure to workers states "optional free housing provided by Planasa (Grower)." Majestic claims it is just a commercial motel.

The OCRA applies to a "farm labor contractor" who "in connection with the recruitment or employment of workers to work in [farm labor], furnishes board or lodging for such workers." ORS 658.507(4)(a)(E). It specifically excludes from coverage "farmers," including "a farmer who operates a farmworker camp …only for the farmer's own operations." ORS 658.507(4)(b)(G).

Planasa and Majestic deny acting as farm labor contractors. Nextcrop was registered as a farm labor contractor but denies providing the housing. It is uncertain whether defendants come within the meaning of ORS 658.507(4)(a)(E).

Assuming liability, the amount of statutory damages recoverable is uncertain. The AWPA allows plaintiffs to recover "statutory damages of up to $500 per plaintiff per violation." 29 U.S.C. § 1854(c). The actual amount of statutory damages awarded is discretionary with the Court. See, *Bobadilla-German v. Bear Creek Orchards, Inc.*, 2009 WL 3448212 at *10 (D. Or. October 21, 2009)(awarding $75.00 to class members for failure to provide written disclosure of terms and conditions of employment). The CORA in ORS 658.805(4) requires a finding of damages: "[I]f damages are found, the amount of damages recoverable from a farmworker camp operator who is subject to suit pursuant to subsection (3) of the section who violates ORS 658.705 to 658.850 is actual damages or $500, whichever is greater." ORS 658.453(4) allows statutory damages $1000 for OCRA violations, but only if plaintiffs establish that Planasa and Majestic acted as farm labor contractors and that Nextcrop operated a farmworker camp.

**B.  The risk, expense, complexity, and likely duration of further litigation**

The claims in this action are somewhat novel and uncertain, and there is some risk that plaintiffs might not prevail on one or more claims against some or all of the defendants. The continuing availability of injunctive relief is also uncertain, given defendants' commitment to follow the law in the future, avoid operating a farmworker camp, and avail themselves of the "innkeeper" exemption. If so, statutory damages under the CORA and OCRA may be unavailable.

See, *Northwest Reforestation Contractors Assn. v. Summitt Forests, Inc.*, 143 Or. App. 138, 922 P.2d 1240 (1996). To recover statutory damages under the CORA, plaintiffs must prove actual damages. As noted above, the amount of AWPA statutory damages is discretionary.

The additional costs for formal discovery, trial and appeal are considerable. Plaintiffs are migrant farmworkers whose availability for depositions and trial would be problematic. Wilk

Settlement Dec. ¶ 3.The named plaintiffs and nearly all of the class members are not Oregon residents and travel costs for discovery and trial will be considerable. Wilk Settlement Dec. ¶ 4; SCA Report, Ex.1. Given the untested nature of the claims and theories of liability, there is a good likelihood that any adverse determination will be appealed by the non-prevailing party, adding additional expense and delay to final resolution of the action. "Legal complexity, factual complexity, even complexity in one portion of the case (such as determining damages), all weigh in favor of settlement." 4 Newberg on Class Actions 13.52 (5th Ed.).

### C. The risk of maintaining class action status throughout the trial

Three and a half years have passed since the events that gave rise to the Action. As time passes, the ability to contact class members decreases. Class members continue to change addresses as they migrate for work and other opportunities. SCA Report ¶ 26; Ex. 2. Many are not able to be located through traditional search methods such as skip traces or publication. SCA Report ¶ 6, 8, 9, 23, 24, 25. Traditional outreach to migrant workers continues to be hampered by the COVID-19 pandemic. Wilk Settlement Dec. ¶ 5. As the number of class members that can be located and contacted decreases, so does the ability to maintain class action status. More notably, the ability for class members to actually receive damage awards decreases significantly.

### D. The amount offered in settlement

The parties' settlement provides substantial and equal statutory damages of $1045.00 to each of the 37 class members who has filed a claim under the procedures outlined in the Settlement Agreement. In addition, defendants agree to follow the law in the future, alleviating the concerns that precipitated filing this action. The settlement provides fair, reasonable and adequate relief to the class. *See,* Report of Mediator. It provides certain and prompt recompense

to very low-income migrant agricultural workers who would otherwise receive nothing. Wilk Settlement Dec. ¶ 21.

The Court should "consider and weigh the nature of the claim, the possible defenses, the situation of the parties, and the exercise of business judgment in determining whether the proposed settlement is reasonable." *City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 462 (2d Cir. 1974). The Court need not decide the merits of the case or substitute its judgment of what the case might be worth for that of class counsel; however "the court must at least satisfy itself that the class settlement is within the 'ballpark' of reasonableness."  4 Newberg on Class Actions 13.49 fn 3 (5th Ed.), citing *Kullar v. Foot Locker retail, Inc.*, 168 Cal. App. 4th 116, 133 (1st Dist.CA 2008).

While some courts have engaged in a mathematical calculation and specific findings of the "net expected value," the Ninth Circuit has rejected that approach. *Lane v. Facebook, Inc.*, 696 F.3d 811, 823 (9th Cir. 2012)(rejecting argument "that the district court was required to find a specific monetary value corresponding to each of the plaintiff class's statutory claims and compare the value to the proffered settlement award"). The Court also concluded, "even as to statutory damages…making any prediction about that recovery [would be] speculative and contingent." F.3d at 823. Plaintiffs' statutory damages claims are not susceptible to mathematical calculation.

The proposed settlement provides certain and substantial statutory damages without delay and is well within the range of reasonableness. *See, Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114, 1125-26 (E.D. Cal. 2009) (finding settlement value fell within the range of possible approval considering that plantiffs' claims turn on unsettled legal questions that might not be resolved in their favor, the agreement "does not release unrelated claims," and

moreover that plaintiffs 'would be required to expend considerable additional time and resources potentially outweighing any additional recovery obtained through successful litigation."

### E.  The extent of discovery completed and the stage of the proceeding

The parties engaged in informal discovery and extensive settlement discussions before the filing of the Class Action Allegation Complaint. Initial outreach and interviews with the named plaintiffs and other class members led to the filing of an administrative complaint concerning the housing of migrant workers at the Majestic Inn and Suites with Oregon Safety and Health Administration (OR-OSHA) on October 26, 2017. Wilk Settlement Dec. ¶ 6, 7. The investigation by OR-OSHA led to a citation issued to Nextcrop that was resolved in a Stipulated Final Order on October 22, 2018. Wilk Settlement Dec. ¶ 8, 9. The administrative record of that proceeding provided extensive discovery of the housing conditions at the motel, the names and room assignments of the workers, and the relationships of the defendants in providing the housing.  Wilk Settlement Dec. ¶ 10.

Class counsel engaged in informal public records discovery of the defendants, including corporate standing with the Oregon Secretary of State, registration of labor housing with OR-OSHA, and licensing of farm labor contractors with the Department of Labor and Oregon Bureau of Labor and Industries Wilk Settlement Dec. ¶ 11. Class counsel obtained payroll and personnel records of the named plaintiffs from Nextcrop, and additional information concerning the relationships and positions of the defendants during discussion with defendants' counsel, and during the mediation of this case. Wilk Settlement Dec. ¶ 12.

Formal discovery is not a prerequisite for approval of a class action settlement where informal discovery provides sufficient information concerning the facts and merits of the case. 4 Newberg on Class Actions  13.50. *See, e.g. Linney v. Cellular Alaska Partnership,* 151 F. 3d

1234, 1239 (9th Cir. 1998): "In the context of class action settlements, 'formal discovery is not a necessary ticket to the bargaining table' where the parties have sufficient information to make an informed decision about settlement." (quoting *In re Chicken Antitrust litigation American Poultry*, 669 F.2d 228, 241 (5th Cir. 1982); *see, also Bowling v. Pfizer,Inc,*, 143 F.R.D. 162 (S.D. Ohio 1992): "[A] fair and reasonable settlement may be negotiated where the plaintiff had access to discovery in other cases and the results of government investigations prior to agreeing to the class settlement."

### F.  The experience and views of counsel

Class counsel and counsel for defendants are experienced employment lawyers with substantial experience in class action litigation. Lead counsel for plaintiffs has been an Oregon lawyer for 40 years, and a farmworker legal services lawyer for 39 years. Declaration of Mark J. Wilk  in Support of Attorney Fees (Wilk Fee Dec.) ¶ 3. Lead counsel for the three defendants have a combined 54 years of experience in very reputable law firms. Wilk Settlement Dec.¶ 13. Counsel all support this settlement as fair, reasonable and adequate, arrived at after an arms-length and non-collusive negotiation process, including a day-long mediation with an experienced labor mediator.

The experience of counsel is considered "somewhat as a proxy for both 'trustworthiness' and 'reasonableness'."  4 Newberg on Class Actions  13.53. *See, Jones v. Singing River Health Services Foundation*, 98 Fed. R. Serv. 3d 228 (5th Cir. 2017): "[I]f experienced counsel reached this settlement, the court may trust that the terms are reasonable in ways that it might not had the settlement been reached by lawyers with less experience in class action litigation."

### G.  The presence of a government participant

Investigation and citation by OR-OSHA of the housing provided at the Majestic Inn and Suites to workers employed by Nextcrop to work in agriculture for Planasa was a catalyst for the initiation of this class action. Wilk Settlement Dec. ¶ 8, 9.  Settlement of this matter on a class action basis was facilitated through the use of the Farm Labor Mediation Program operated by the Oregon Department of Agriculture.  Although the Department of Agriculture was not itself a party to the mediation, its imprimatur was important, as noted in Recital D. of the Settlement Agreement:

> Named Plaintiffs and Defendants, by and through their respective counsel, have engaged in settlement discussions in connection with the potential resolution of the Action, including private mediation on November 21, 2019, through the Oregon Farm Mediation Program of the Oregon Department of Agriculture with Mediator Ken Pallack. Mediator Pallack is an experienced agricultural labor mediator with extensive knowledge in agricultural labor laws. The Parties submitted mediation statements to Mediator Pallack in advance of the mediation. Mediator Pallack has independently analyzed and evaluated the merits of the claims made against Defendants and the Defendants' defenses to those claims. Mediator Pallack's involvement was helpful in ultimately facilitating the Agreement, which the Parties believe to be fair, reasonable, and adequate and in the best interest of the Named Plaintiffs and the Settlement Class.

> Accordingly, Named Plaintiffs and Defendants—subject to the approval of the Court—have entered into a binding agreement to settle the Action pursuant to the terms set forth in this Agreement, which shall be submitted to the Court for approval through the mechanisms set forth below.

### H. The reaction of class members to the proposed settlement

The settlement has had 100 percent support from the named plaintiffs and all class members who have engaged in the claims process. SCA Report ¶ 14,15; Wilk Settlement Dec. ¶ 14. 37 class members have returned signed claim forms, and a number have assisted others in obtaining and returning claim forms. SCA Report ¶ 16,17, 40; Ex. 1. One common question is how quickly class members will receive their checks. SCA Report ¶ 15. Support for the settlement has also been expressed by a number of workers who are not class members. SCA Report ¶ 18.

No class member has filed a written opt-out statement or a written objection to the settlement. SCA Report ¶ 42, 43. Nor has any class member voiced any oral objection or said they wanted to opt-out of the settlement. SCA Report ¶ 42, 43. No class member has expressed that his or her decision to not participate in the class is in any way related to his or her dissatisfaction with the settlement. SCA Report ¶ 45. While the number of filed claims is lower than might be hoped for, there is no reason to think that non-participation in any way indicates disapproval of the settlement.

### I. Final Approval of Settlement As a Class Action

The Court in its September 16, 2020, Order decided: "The Court preliminarily finds that this Action meets the requirements for class certification under Federal Rule of Civil Procedure 23."

The prerequisites of Fed. R. Civ. P. 23(a) continue to be met: numerosity; commonality; typicality; and adequacy of representation. The requirements of Fed. R. Civ. P. 23(b)(3) also continue to be met: predominance of issues; superiority to individual actions; and efficiency and manageability.

Fed. R. Civ. P. 23(c)(2)(B) provides: "For any class certified under Rule 23(b)(3) – or upon ordering notice under Rule 23(e)(1) to a class proposed to be certified for purposes of settlement under Rule 23(b)(3) – the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all class members who can be identified through reasonable effort." Fed. R. Civ. P. 23(e)(1) provides: "The court must direct notice in a reasonable manner to all class members who would be bound by the proposal."

In its September 16, 2002 Order, the Court approved the notice and claim process set out in the Settlement Agreement: "The Court finds that the distribution of the Notice substantially in the manner and form set forth in the Agreement meets the requirements of due process under the Constitution and Rule 23(e), and that such Notice is the best practicable under the circumstances and shall constitute due and sufficient notice to all persons entitled thereto."

As detailed in the Report of the Settlement Claims Administrator, notice of the pendency of the class action and proposed settlement was provided to class members in accordance with the terms of the Settlement Agreement and Court Order. Copies of the court-approved Notice and Claim Form were sent to all class members by first class mail on September 30, 2020. SCA Report ¶ 4. The Bar Date by which class members were required to mail (postmark) their claim forms was March 4, 2021, fully 155 days from the initial mailing of notices and claims. SCA Report ¶ 40.

Additional copies were mailed, sometimes multiple times and to multiple locations, to all class members who indicated that they had not received them. SCA Report ¶ 20, 26. For the 22 class members whose mailings were returned as undeliverable, the Settlement Claims Administrator performed an Accurint skip trace and took all reasonable steps to obtain correct

addresses and re-mail the Notice and Claim Form. SCA Report ¶ 8, 13, 14, 16. In all, additional mailings were made to 29 class members. SCA Report ¶ 26. Follow-up postcards were mailed on January 12, 2021 to 37 class members who had not responded to the previously mailed notices, including 12 to new addresses. SCA Report ¶ 21.

The Settlement Claims Administrator took additional steps to provide notice to class members. Class members who had returned claim forms were asked for contact information for family members or other class members they knew, and were asked to contact those members or have them call. SCA Report ¶ 14, 16. Additional Accurint skip traces were done for 15 class members whose mailings had not been returned but who had not responded to the notices, and additional mailings were done for those for whom new addresses could be obtained. SCA Report ¶ 23.

On February 1, 2021, counsel for defendants was sent a list of 37 class members who had not responded, with a request for any new addresses information they might have. SCA Report ¶ 28. Also on that date, class counsel proposed additional outreach efforts to reach absent class members, in accordance with Section 2.3.D. of the Settlement Agreement. SCA Report ¶ 29. Defendants agreed, and radio announcements were played in Oregon and California on stations most likely to be heard by class members. SCA Report ¶ 33, 34. A total 16 to 18 announcements were played over a three-week period between February 8 and 21. SCA Report ¶ 35, 36. The radio announcements were also available to listeners on the internet. SCA Report ¶ 35, 38.

All reasonable efforts have been made to provide actual and individualized written notice of the proposed settlement to all class members. There have been no objections or opt-out statements filed in the Action, and no class member has expressed dissatisfaction with the terms

of settlement. SCA Report ¶ 42, 43, 45. The Court should give final approval to the parties'
settlement on a class action basis so that class members who have completed claim forms can
receive the benefits of the class settlement.

## II. Approval of Service Payments to Class Representatives

Section 3.1.C. of the Settlement Agreement provides, "In return for services rendered to
the Settlement Class, Named Plaintiffs will apply to the Court to receive a Service Award of six
thousand dollars ($6,000) in total for all three Named Plaintiffs combined, which application
Defendants shall not oppose."    Each class representatives is eligible to receive a service award
of $2000 in recognition of their efforts in advancing this litigation, service to the class and
broader release of all possible claims beyond those alleged in the Complaint. *See*, Section 3.5.B.
of the Settlement Agreement in which the named plaintiffs release defendants "from all Released
Class Claims as well as any other claim of any kind under federal, state, or local law or common
law based on events that took place from the beginning of time through the entry of the Final
Order."

The three named plaintiffs seek approval of a service payment of $2000 to each of them.
The named plaintiffs have been involved in this matter from the beginning: the filing of the
administrative complaint with OR-OSHA concerning housing conditions at the Majestic Inn and
Suites. Wilk Settlement Dec. ¶ 7, 8. Without their participation this civil action would never
have been filed. Wilk Settlement Dec. ¶ 15, 16. Their agreement to seek class relief and to serve
as class representatives demonstrates their commitment to serving the interests of other
farmworkers more generally and not just their personal, private interests. Wilk Settlement Dec. ¶
18, 19. They have made themselves available whenever needed and have fully participated in the

development and prosecution of this action, and in the settlement claim process. Wilk Settlement Dec. ¶ 15.

Some of the notable contributions that the named plaintiffs have made include: detailing the housing conditions that they and other class members experienced; agreeing to the filing of a complaint with OR-OSHA; participating in interviews with OR-OSHA; providing factual information necessary to prepare the case; agreeing to bring class claims; preparing for and participating in mediation; maintaining contact with class counsel while migrating for work; and being available whenever necessary to further the development of the case. Wilk Settlement Dec. ¶ 6, 7, 8, 14, 15, 16, 17, 18, 19, 20.

Based on contemporaneous time records of class counsel,it is estimated that they have each spent at least 40 hours of service to furtherance of this civil action. Wilk Settlement Dec. ¶ 20; Wilk Fee Dec. Exhibit 1. They have spent additional hours assisting in the settlement claim process. SCA Report, Ex. 3. Plaintiffs seek service awards of $2000 each.

"[C]lass representatives are often awarded a so-called "incentive payment" in return for the service they provided to the class by undertaking that role." 4 Newberg on Class Actions  13.59; *see generally,* Eisenberg and Miller, *Incentive Payments to Class Action Plaintiffs: An Empirical Study*, 53 U.C.L.A. L. Rev. 1303, 1346 (2006)(reporting median incentive award of $18,191). That the named plaintiffs seek a much more modest sum is indicative of the propriety of their request. "Thus, incentive payments are generally upheld as a reasonable differential payment and 'raise no red flag'."  4 Newberg on Class Actions  13.59, citing *Klingensmith v. Max & Erma's Restaurants, Inc.* 2007 WL 3118505, *5 n. 13 (W.D. Pa. 2007)("The Court concurs… that the class representative's award of $2500 in this action raises no 'red flag' when it is properly

considered as a necessary incentive to aid in the enforcement of legislation, and as compensation to an individual willing to contribute her name and time to this purpose.); *see, also In re Mego Financial Corp. Securities Litigation*, 213 F.2d.454 (9th Cir. 2000).

### III. Approval of Attorney Fees and Costs

Section 3.1.D. of the Settlement Agreement provides, "Class Counsel will petition the Court for an award of twenty thousand dollars ($20,000), which shall include attorneys' fees, costs, and expenses incurred in connection with Class Counsel's prosecution of the Action and its resolution, but not the cost of the Settlement Claim Administrator. Defendants shall not oppose this application, including any appeal or request for reconsideration if the application is denied or modified by the Court."

The amount of Plaintiffs' attorney fees was discussed only at the end of the mediation, and at the insistence that counsel for plaintiffs provide a sum certain for defendants to consider. As outlined in the Declaration of Mark J. Wilk in Support of Award of Attorney Fees and Costs, the agreed amount of fees is more than reasonable and substantially less than the lodestar calculation of actual attorney time spent times a reasonable hourly rate. Lead counsel alone has spent over 245.1 hours in the prosecution of this action. Plaintiffs seek $20,000 in attorney fees and costs, pursuant to the Settlement Agreement.

### IV. Approval of Payment to Settlement Claim Administrator

Section 3.1.E. of the Settlement Agreement, entitled "Settlement Administration Funds," provides, "The Settlement Claims Administrator shall be entitled to three thousand dollars ($3000) for costs of administering the QSF." The time spent for claim administration is at least

112.2 hours.  SCA Report, Ex. 3. The time spent in claim administration is separate from and not included in the amount attorney time spent on this Action. Ex, 1, Sec.3.1.D.; Wilk Fee Dec. ¶ 16. Plaitnffs seek $3000 in settlement claim administration fees.

DATED: April 20, 2021                    OREGON LAW CENTER

                                         s/ Mark J. Wilk
                                         _____
                                         Mark J. Wilk, OSB No.814218
                                         Of Attorneys for Plaintiffs
                                         Telephone: (503)981-0336
                                         Of Attorneys for Plaintiffs